JgPETTIGREW, J.
The defendant, Terry Vince, was charged by grand jury indictment with one count of first degree murder, a violation of La. R.S. 14:30, and he pled not guilty. He moved to suppress a taped telephone conversation between himself and his cousin, but the motion was denied. Following the guilt phase of a jury trial, he was found guilty as charged by unanimous verdict. However, the jury deadlocked during the penalty phase of the trial. The defendant moved for a new trial, but the motion was denied. He was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence.[1] He now appeals, designating three assignments of error.
FACTS
The record reflects that the defendant shot the victim, Jeff Pursley, in the head at point-blank range, killing him, after he failed to immediately respond to the defendant’s demand, “give me your money, give me your money, punk.” The victim was in a trailer located at 4141 Walnut Street, Slidell, Louisiana, talking to his girlfriend on the telephone when the defendant attempted to rob him at gunpoint. The defendant also shot Chris Dennis, one of the victim’s friends, who was present in the trailer at the time of the robbery. Fred Ohler, another of the victim’s friends in the trailer, hid behind a table during the shooting and escaped being shot. Thereafter, the defendant fled the scene, threatened the lives of the two men who had accompanied him to the trailer, disposed of the weapon in a pond, and fled to Cleveland, Ohio. The defendant was later captured in Cleveland, Ohio, by a FBI fugitive apprehension team.
During the trial, the State introduced into evidence State Exhibit # 35, a July 12, 1996, taped telephone conversation between the defendant and his cousin, Frederick Nathan Campbell, taped in the presence of Sergeant Fred Oswald of the St. Tammany Parish Sheriffs Office. In the conversation, the defendant acknowledged his commission |sof the murder; acknowledged he had not gotten any money from the victim after shooting him in the head; acknowledged he had disposed of the murder weapon; described the location of the pond where he had disposed of the murder weapon; stated he had returned the visor he had worn during the murder to Cedrick (one of the men who accompanied the defendant to the trailer) with instructions to burn it; stated he had burned the shirt that he had worn during the murder; and stated “if I’d had one more bullet, I’d a got Jimmy (one of the men who accompanied the defendant to the trailer and the brother of the victim).”
SWEARING OF JURORS
In his first assignment of error, the defendant contends the trial court failed to *310 swear in two members of the jury, Janice G. Hill and Linda H. Humphrey. The defendant recognizes that the minutes reflect that Ms. Hill and Ms. Humphrey were indeed duly sworn to serve as jurors. However, he argues the minutes should be disregarded because the voir dire transcript does not reflect that either Ms. Hill or Ms. Humphrey were sworn as jurors, and reflects that a defense peremptory exception was urged against Ms. Hill.
A thorough review of the record reveals that while the voir dire transcript apparently omitted Ms. Hill’s and Ms. Humphrey’s individual swearing, it does reflect the swearing of all 14 members of the jury as a whole. Further, the minute entry that listed the jurors who were sworn, including Ms. Hill and Ms. Humphrey, is consistent with the trial transcript that contains a listing of jurors as they were individually polled when the verdict was returned. Thus, while there are discrepancies between the minutes and portions of the voir dire transcript, the minutes are corroborated by other portions of the voir dire transcript as well as the detailed, careful individual polling of the jurors after the rendition of their verdict at the conclusion of the guilt phase of the defendant’s trial. Accordingly, we find the record as a whole corroborates the minutes. This assignment of error is without merit.
J^MOTION TO SUPPRESS
In assignment of error number two, the defendant contends the trial judge abused his discretion in overruling the defense motion to suppress. The defendant argues that his cousin’s consent to the taping of the telephone conversation with him was “induced” by police within the meaning of State v. Cutrera, 558 So.2d 611 (La.App. 1 Cir.1990), disapproved on other grounds, State ex rel. Marks v. Thompson, 596 So.2d 193 (La.1992). The Electronic Surveillance Act, La. R.S. 15:1301, et seq., generally prohibits the interception and disclosure of wire or oral communications. However, there are exceptions to this general prohibition, such as where one of the parties to the communication consents to its interception, or where a prior court order for the interception is obtained. See La. R.S. 15:1303 C(3) and La. R.S. 15:1308.
In Cutrera, this court held that a trial court correctly denied a motion to suppress a taped telephone conversation between Teresa Feeback and the defendant therein concerning a drug purchase. In addressing the defendant’s argument concerning whether a Louisiana State Trooper had given a hearsay answer, we noted that the Trooper’s answer that Ms. Feeback had given permission for the tape-recording of the conversation did not establish that the consent to the tape-recording was freely and voluntarily given. We affirmed the denial of the motion to suppress on the basis that “the evidence adduced at the motion to suppress hearing proved the vol-untariness of Ms. Feeback’s consent to the tape-recording of this telephone conversation.” This evidence consisted of defense counsel’s thorough questioning of the Trooper concerning Ms. Feeback’s consent, particularly, “Ms. Feeback’s pending charges and whether or not she was a paid State Police informant.” We also referenced the Trooper’s unequivocal statement that Ms. Feeback’s permission to tape-record the conversation was not given as a result of “promises, threats, or inducements.” See Cutrera, 558 So.2d at 613.
In the instant case, prior to trial, the defendant filed a motion to suppress the taped telephone conversation between his cousin, Frederick Nathan Campbell, and himself. Citing Cutrera, the defendant argued that if Mr. Campbell had consented to the taping of his conversation with the defendant, such consent was not freely and voluntarily | ¡¡given because it was obtained through the use of threats, promises, duress, or inducements. Following a hearing on the motion to suppress, the trial court denied the motion, and the defendant objected to the court’s ruling. The court explained:
*311 As to the other issues on the motion to suppress I find that Mr. Cambell (sic) did approach the police officers. That they made it very clear to him that no promises could be made to him for him making this telephone conversation. That in fact they told him all they could do was contact certain individuals and indicate his level of cooperation. I don’t think that amounts to an inducement or a promise for him to do what he did. I therefore find that it comes under the exception of 15:1303, general exclusion of these taped conversations, 15:1303-C(3), “It shall not be unlawful under this [Cjhapter for a person acting under the cover (sic) of law to intercept a wire or oral communication!,] where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.” I think that these circumstances fit the language of the statute and that the prior consent was given and that it was not given through threats, promises, inducements or coercions. I therefore deny that portion of the motion to suppress.
There was no abuse of discretion in overruling the defense motion to suppress. In the instant case, as in Cutrera, the evidence adduced at the motion to suppress hearing established the voluntariness of Mr. Campbell’s consent to the tape-recording of this telephone conversation.
Mr. Campbell testified that Detective Jim Richard of the St. Tammany Parish Sheriff’s Office never promised him anything, and told him, “No promises.” Detective Richard told him that the district attorney’s office would be advised of his cooperation, but no promises were being made. Mr. Campbell further indicated that at no time did Detective Richard threaten him to get him to make the telephone call to the defendant.
Mr. Campbell testified that Sergeant Fred Oswald of the St. Tammany Parish Sheriff’s Office never threatened or coerced him to get him to make the telephone call. Neither did Detective Oswald, at any time, promise him anything to get him to make the telephone call. In fact, Mr. Campbell answered, “Did it on my own,” when asked, “That is did Detective Oswald make you do this or did you do it of your own free will?”
Mr. Campbell also testified that on July 3, 1996, when he was unable to contact the defendant on the telephone, and on July 12,1996, the day the telephone call at issue IfiWas taped, he (Mr. Campbell) had not been in custody, and it had been his decision to go to the sheriffs office.
Detective Oswald also testified at the motion to suppress hearing. He denied that Mr. Campbell had approached him and demanded “something in exchange” for his cooperation. Rather, Detective Oswald explained that Mr. Campbell had asked what could be done for him. Detective Oswald told Mr. Campbell that the sheriffs office would notify the district attorney’s office and the judge handling his case about his cooperation. Detective Oswald denied either threatening Mr. Campbell or promising him anything on either July 3, 1996, or July 12, 1996, in order to get him to telephone the defendant. According to Detective Oswald, Mr. Campbell had not been in custody on either occasion, and on both occasions, he had come into the office of his own accord. Mr. Campbell provided the defendant’s telephone number to Detective Oswald and made the telephone call to the defendant.
Further, we note Webster’s II New College Dictionary 565 (1995) defines “inducement” as “the act or process of inducing,” and “induce” as “[t]o lead or move by persuasion or influence” and “[t]o bring about: CAUSE.” The defendant’s instant argument rests upon the fact that Mr. Campbell likely went to the police and proposed the taped telephone conversation with the defendant out of a selfish desire to obtain police assistance to better his own position. However, even under such a *312 scenario, the fact would remain that Mr. Campbell went to the police independently and of his own free will, rather than in response to any police “inducement.” If anything, Mr. Campbell induced the police to action, rather than vice versa. Accordingly, this assignment of error is without merit.
ADVICE OF PRESCRIPTIVE PERIOD FOR POST-CONVICTION RELIEF
In assignment of error number three, the defendant contends the trial judge faded to properly advise him of the prescriptive period for filing for post-conviction relief. The State concedes that the defendant was misinformed of the period.
The record reflects that after imposing sentence, the trial court advised the defendant of the prescriptive period for filing for post-conviction relief as follows: “You’re |7further informed that under the provisions of Section 930.8 of the Louisiana Code of Criminal Procedure you have only three years in which to file any and all petitions for post conviction relief.”
Louisiana Code of Criminal Procedure article 930.8 A, in pertinent part, provides that no post conviction relief application will be considered “if it is filed more than three years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922.” However, the trial court’s failure to properly advise the defendant of the delay as required by La.Code Crim. P. art. 930.8 C has no bearing on the sentence and is not grounds to reverse the sentence or remand the case for resentencing. The trial court hereby is directed to give the defendant written notice of the correct prescriptive period for applying for post-conviction relief within ten days of the rendition of this opinion and to file written proof in the record of the proceedings that the defendant has received notice. See State v. Lewis, 94-2145, p. 8 (LaApp. 1 Cir. 11/9/95), 665 So.2d 38, 43.
CONVICTION AND SENTENCE AFFIRMED.

. The trial court did not observe a twenty-four hour delay between denying the defendant's motion for new trial and imposing sentence. See La.Code Crim. P. art. 873. However, defense counsel answered, "Yes, Your Hon- or!,] ” when, after denying the motion for new trial, the court inquired whether the defendant was ready for imposition of sentence. Accordingly, the defendant implicitly waived the delay. See State v. Perez, 95-2445, p. 7 (La.App. 1 Cir. 12/20/96), 686 So.2d 114, 118, writ denied, 97-0280 (La.6/20/97), 695 So.2d 1351.