846 So.2d 167 (2003)
STATE of Louisiana
v.
Shermond ESTEEN.
No. 02-KA-1241.
Court of Appeal of Louisiana, Fifth Circuit.
April 29, 2003.
*170 Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Terry M. Boudreaux, Frank Brindisi, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Franz L. Zibilich, Metairie, LA, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS and CLARENCE E. McMANUS.
SOL GOTHARD, Judge.
The defendant, Shermond Esteen, was found guilty of possession of marijuana with intent to distribute, a violation of La. R.S. 40:966 A. He was subsequently adjudicated *171 a habitual offender and sentenced to an enhanced sentence of 33 years at hard labor, without benefit of probation or suspension of sentence. Defendant appeals from his conviction and sentence.
FACTS
Sergeant Todd Vignes, a narcotics agent with the Jefferson Parish Sheriff's Office, testified that in September 1997, an informant told him about a deputy who was trafficking in cocaine. Vignes was assigned to investigate that deputy, Carey Usian.[1] Vignes was unable to uncover evidence that Usian was trafficking in cocaine, but he learned the deputy was violating department policy by experimenting with cocaine and marijuana. He set out to establish who was selling marijuana to Usian. He eventually marked defendant, Shermond Esteen, as a suspect.
On November 12, 1997, Vignes and his partner, Agent Lambert, took Usian into custody. Usian told them that defendant was his source for marijuana, and he agreed to cooperate in the investigation. Vignes and Lambert had Usian telephone defendant and attempt to purchase marijuana. Vignes listened to, and recorded, both sides of the conversation. The audio tape and written transcript of the conversation were admitted at trial over defendant's objection.
Following Usian's telephone call, Vignes applied for, and obtained, a warrant to search defendant's residence at 636 Bannerwood Drive in Gretna. Vignes coordinated the execution of the warrant, which involved five officers. A surveillance team, which included Detective Rene Bodet, watched the house for one hour. Bodet testified he did not see anyone enter or leave the premises. At about 8:50 p.m., Vignes knocked on the front door of the house. When he did not receive a response, he knocked again, and loudly announced, "Police with a search warrant, open the door." Again there was no response. Vignes tried the doorknob, and found it was unlocked.
Vignes opened the door and entered the house. He saw defendant, and immediately handcuffed him. The officers found that defendant's wife and child were there. Vignes informed defendant he had a warrant to search the house for marijuana, and advised defendant of his rights. Defendant asked to see the warrant, and Vignes allowed him to review it. Defendant showed willingness to cooperate with the officers. He led Vignes into his bedroom, and motioned with his head toward a black bag that was lying on the bed. Vignes picked up the bag. Defendant then motioned toward the pillows on the bed. Vignes moved them, and found a clear plastic bag containing green vegetable matter.
Vignes opened the black bag, and found it contained a clear plastic bag with 13 "blunts," i.e., cigar casings filled with what appeared to be marijuana. There was another plastic bag containing three blunts. There were two additional plastic bags, both containing a quarter of an ounce (about seven grams) of what Vignes believed was marijuana. Also inside the bag were a box of plastic sandwich bags, cigarette rolling papers, and a digital scale.
Bodet seized a personal planner/telephone book. He also found what appeared to be a partially smoked marijuana cigarette on the headboard of defendant's bed. Bodet testified that the headboard consisted of a shelving system. The officers seized defendant's driver's license, a second *172 partially smoked marijuana cigarette, and paperwork bearing defendant's name and address.
Daniel Waguespack, a forensic scientist with the Jefferson Parish Sheriff's Office, testified that he conducted tests on evidence collected by the officers. The material inside the cigars and the loose vegetative material tested positive for marijuana.
Sergeant Bruce Harrison, a narcotics agent with the Jefferson Parish Sheriff's Office, was qualified as an expert in the packaging and distribution of narcotics. He testified that it has been a common practice, during the last three to five years, for narcotics dealers to remove the tobacco from inside cigars and replace it with marijuana. Blunts sell for more than the typical marijuana cigarette, and the remnants of the cigar tobacco help to mask the odor of the marijuana when the blunt is smoked.
Harrison testified that someone possessing marijuana for personal use would have no reason to divide it into individual bags, as the evidence in this case was packaged. A casual user would not typically have 13 blunts in his possession at one time. Plastic sandwich bags, prepared cigarettes or blunts, and a substantial amount of individually packaged marijuana are indicative of preparation for sale. The fact that a scale was seized was indicative of intent to prepare marijuana for sale in standard increments of one quarter to one-half ounce each.
Harrison estimated that all of the marijuana together weighed about a quarter of a pound, or 130 grams. It is not inconceivable that someone would possess that amount for personal use. Weight is not, however, the only consideration. Harrison felt that the evidence as a whole (the plastic bags, the cigars, and the scale) pointed to distribution. If all of the marijuana seized were packaged and sold to individual buyers, its worth would amount to between 400 and 500 dollars.
Ronnette Esteen, defendant's wife, testified for the defense. She stated that when the police officers arrived at her family's house, she heard a knock on the door. The officers entered immediately by knocking down the door. She further testified that she knows Carey Usian; that he has stayed in the guest bedroom at her house. She recognized the black bag in evidence as one Usian sometimes brought to the house. She saw Usian two days before the search, and he had the bag with him at that time. Ms. Esteen testified that the officers did not inform her they were at the house to execute a search warrant. Nor did they ever show her or defendant a copy of the warrant.
Roland Jackson testified he has known defendant as a friend for 13 to 14 years. He saw Carey Usian at defendant's house on occasion. Usian carried a black bag with him. Mr. Jackson did not know what Usian carried in the bag. He knew the bag did not belong to defendant, but he did not give that information to police.
Delrick Urquhart testified he has known defendant since they went to high school together. He visited defendant's house regularly. He met Carey Usian there. Urquhart recalled having seen Usian with the black bag at defendant's house. He stated he was familiar with the furnishings in defendant's house. He testified that the bed in the master bedroom had a black headboard, but it did not contain a shelving unit.
Ronald Franklin, defendant's father-in-law, testified that he is a carpenter. He made repairs to his daughter's front door. It looked as if it had been kicked in. It was leaning almost off of its hinges. Franklin did not have firsthand knowledge as to why the door was in that condition.
*173 He conceded that he had testified on an earlier occasion that only the lock and the keeper (the part that holds the lock) were damaged, and that the door's hinge was loose.
Although charges were filed against Usian, he was at large at the time of defendant's trial.
ALLEGATIONS OF ERROR
In his first allegation of error, defendant alleges that his counsel was ineffective, and therefore his conviction is null. He maintains that his retained trial counsel was ineffective in several respects: 1) she did not have his cooperation during the course of trial, but failed to inform the trial court of the situation until after the trial; 2) she utilized the assistance of another defense attorney during trial, against defendant's express instructions, and without allowing defendant the opportunity to confer with that attorney; 3) she failed to call expert witnesses or provide expert testimony to demonstrate Carey Usian's involvement in the offense; and, 4) she did not file a motion for a Daubert[2] hearing regarding Detective Bruce Harrison's expert testimony until the morning of trial, and failed to apply for supervisory writs from the trial court's ruling after stating her intention to do so.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. When a defendant seeks reversal of a conviction based on ineffective assistance of counsel, he must satisfy both part of the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel "committed errors so serious that he or she was not functioning as `counsel' guaranteed a defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. The key question must be whether counsel's performance was reasonable considering all the circumstances.
Secondly, the defendant must show that the deficiency was so great as to prejudice the defense. This requires a showing that counsel's errors were "so serious as to deprive the defendant of a fair trial; one with a reliable result." Id. Effective assistance of counsel does not mean errorless counsel, or counsel who may be judge ineffective on mere hindsight. State ex rel. Graffagnino v. King, 436 So.2d 559, 564 (La.1983); State v. Ruffin, 02-798, p. 16 (La.App. 5 Cir. 12/30/02), 836 So.2d 625, 635.
Claims of ineffective assistance of counsel are generally relegated to post-conviction proceedings rather than direct appeal, unless the record permits definitive resolution on appeal. State v. Steele, 01-1414, p. 17 (La.App. 5 Cir. 9/30/02), 829 So.2d 541, 552.
First, defendant argues that counsel failed to perform competently at trial due to his own failure to cooperate with her in preparing a defense. Defendant's own decision not to cooperate with his legal representatives places with him the responsibility for counsel's inadequate preparation at trial. See, State v. Owens, 30,903, p. 10 (La.App. 2 Cir. 9/25/98), 719 So.2d 610, 617, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Defendant next complains that counsel was deficient in allowing an attorney with whom he (defendant) had not *174 conferred to take part in the trial. Defendant does not specify how the attorney's involvement caused counsel's representation to be deficient, nor does he show how he was prejudiced by the attorney's participation in the trial. A reading of the pre-trial minute entries shows that defendant was, over the course of nearly two years, represented by at least six different attorneys in court. The trial transcript lists four attorneys representing defendant at trial. All of those attorneys participated in some way in the trial.
Defendant argues that trial counsel was deficient in failing to pursue fingerprinting, DNA testing, or some other identification method to show that Casey Usian handled the bag in which the marijuana was found. Defendant maintains such evidence would have aided his case, as his defense was based on a claim that Usian was the one who placed the contraband in the satchel.
We note that the attorney's decisions regarding gathering and introduction of evidence fell within the ambit of "trial strategy." The Louisiana Supreme Court has held that if an alleged error is part of counsel's trial strategy, it does not establish ineffective assistance of counsel. State v. Williams, 00-2116, (La.App. 4 Cir. 2/28/01), 782 So.2d 145. The Supreme Court has held that hindsight is not the proper perspective from which to judge the competency of such decisions by counsel. Opinions may differ as to the advisability of a tactic; and an attorney's level of representation may not be determined by whether a particular strategy is successful. State v. Brooks, 505 So.2d 714, 724 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). In this case, several witnesses testified that the satchel in which the marijuana was found belonged to Usian, and that they had seen Usian with the bag, and therefore, forensic evidence connecting Usian with the bag was unnecessary.
Defendant finally contends he was denied effective assistance of counsel because she failed to properly pursue his motion for a Daubert hearing to determine Sergeant Harrison's qualifications as an expert. In defendant's third allegation of error, discussed infra, we find no merit to defendant's claim that the trial court erred in failing to hold a Daubert hearing. We find defendant's claim that counsel was ineffective to be without merit.
In his third allegation of error, defendant alleges that the trial court's refusal to conduct a Daubert hearing, prior to the testimony of Sargeant Harrison, was a substantial error of law.
The general rule for admissibility of expert testimony is contained in La. C.E. art. 702, which provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
In Daubert, the United States Supreme Court held that Federal Rule of Evidence 702 imposes an obligation upon a trial judge to ensure that scientific testimony is relevant and reliable. The Daubert court listed several factors that a court could consider in determining the admissibility of an expert's testimony. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue. Daubert, 509 U.S. at 592-593, 113 S.Ct. at 2796. Some factors bearing on this analysis are whether: 1) a *175 theory or technique can be or has been tested; 2) it has been subjected to peer review or has been published; 3) there is a high known or potential rate of error; 4) there are standards controlling the technique's operation; and, 5) the theory enjoys general acceptance in the relevant scientific community. Id. In State v. Foret, 628 So.2d 1116 (La.1993), the Louisiana Supreme Court recognized that courts may rely on the standard enunciated in Daubert when evaluating the admissibility of scientific expert testimony pursuant to Article 702.
In Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the United States Supreme Court found that a trial court may apply the Daubert factors when determining the admissibility of all expert testimony, not just scientific testimony. At the same time, the Court recognized a trial court's broad discretion in determining whether the specific factors in Daubert are reasonable measures of reliability in a particular case. The trial court's decision to admit or exclude expert testimony is subject to the "abuse of discretion" standard. Kumho, 119 S.Ct. at 1176, 526 U.S. 137; State v. Craig, 95-2499, pp. 8-9 (La.5/20/97), 699 So.2d 865, 870, cert. denied, 522 U.S. 935, 118 S.Ct. 343, 139 L.Ed.2d 266 (1997); State v. Stokes, 99-1287 at pp. 5-6, 759 So.2d at 984.
To establish defendant's guilt in the instant case, the State was required to prove beyond a reasonable doubt that defendant knowingly and intentionally possessed the marijuana with the specific intent to distribute it. LA.-R.S. 40:966A. One method by which the State commonly seeks to prove intent to distribute is by producing expert testimony or other evidence to show that the amount of the drug found in the defendant's possession is inconsistent with personal use. See, State v. Hearold, 603 So.2d 731, 735 (La.1992). In order to demonstrate intent in the instant case, the State offered Sergeant Harris as an expert in the packaging and distribution of narcotics, specifically marijuana.
Defendant complains that the trial judge erred in finding Sergeant Bruce Harrison to be an expert based only on a "voir dire" of the witness in the jury's presence. Defendant argues that Daubert, supra, required the trial court to conduct a full hearing regarding Harrison's qualifications out of the jury's presence.
Before the court approved Harrison as an expert, he testified regarding his experience as a narcotics officer and his formal training. Harrison testified he had worked with the narcotics division of the Jefferson Parish Sheriff's Office for four years, before which time he was a New Orleans police officer for 12 years. The majority of his work with the New Orleans Police Department had to do with street level narcotics trafficking. Over the years, Harrison has participated in thousands of drug related arrests.
Harrison's training included an associate degree in criminal justice. He also received training in narcotics interdiction at the police academy, and attended 264 hours of additional training in seminars over the course of his career. When questioned on the predicate by defense counsel, Harrison testified that he had never been recognized as an expert by an educator in the field of narcotics. He had never been subject to peer review, from a scholarly perspective. This, however, is something not commonly associated with police work.
Defendant does not show how Harrison's qualifications were so lacking that the trial court abused its discretion in finding him to be an expert. See, State v. Stokes, supra. We find that the trial court *176 did not err in allowing Sargeant Harrison to testify as an expert.
In his second allegation of error, defendant alleges that the trial court erred in failing to grant his motion to suppress, thereby allowing the admission of a taped telephone conversation between Carey Usian and himself, in which they purportedly discussed the purchase of marijuana. Defendant maintains Sergeant Todd Vignes' testimony that Carey Usian consented to the taping of the conversation constituted impermissible hearsay, as Usian was not available to testify.
The Electronic Surveillance Act, La. R.S. 15:1301, et seq., generally prohibits the interception and disclosure of wire or oral communications. However, there are exceptions to this general prohibition, such as where one of the parties to the communication consents to its interception. La. R.S. 15:1303 C(3). Defendant argues that the only evidence of Usian's consent offered by the State was hearsay testimony given by Sergeant Vignes.
Hearsay is evidence of an unsworn, out-of-court statement made by a person other than a testifying witness and offered as proof of the statement's content. La. C.E. art. 801C. During the motion hearing, the prosecutor asked Vignes, "Did you ask Deputy Ussein (sic) if you could listen in?" Vignes responded, "Yes." The prosecutor then asked, "What did he say?" Vignes answered, "Yes." Vignes further testified that he did not threaten Usian or force him to make the telephone call. Thus, Vignes' testimony was hearsay. However, the prohibition against hearsay evidence does not apply to suppression hearings. State v. Smith, 392 So.2d 454, 458, n. 6 (La.1980); State v. James, 99-0423, p. 11 (La.App. 4 Cir. 2/16/00), 755 So.2d 995, 1002, writ denied, 00-0872 (La.3/9/01), 786 So.2d 112. Sergeant Vignes' motion hearing testimony was sufficient to show the voluntariness of Usian's consent. Compare State v. Cutrera, 558 So.2d 611 (La.App. 1 Cir.1990), disapproved of on other grounds, State ex rel. Marks v. Thompson, 596 So.2d 193 (La. 1992). See also, State v. Vince, 99-1892 (La.App. 1 Cir. 6/25/99), 739 So.2d 308, writ denied, 99-2232 (La.1/28/00), 753 So.2d 230.
In any case, the improper admission of hearsay is subject to the harmless error rule. State v. Williams, 98-1006, p. 21 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 77, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118. The proper analysis for determining harmless error is, "not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in the trial was surely unattributable to the error." Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). In the instant case, defendant does not show how he was prejudiced by the admission of the taped telephone conversation. The exchange between Usian and defendant was so ambiguous that it was not apparent what the subject of the conversation was. Moreover, the State's evidence, as a whole, was so overwhelming as to outweigh any prejudice that might have accrued to defendant. Accordingly, we find no merit to this allegation of error.
In assignment of error number four, defendant argues that his 33-year habitual offender sentence is constitutionally excessive, considering the relatively small amount of marijuana seized.
Defendant did not file a written motion to reconsider sentence as to the *177 habitual offender sentence,[3] nor did he make a specific oral objection as prescribed by LSA-C.Cr.P. art. 881.1. Such an omission normally precludes review of a sentence on appeal. See, State v. Ewens, 98-1096, p. 10 (La.App. 5 Cir. 3/30/99), 735 So.2d 89, 96, writ denied, 99-1218 (La.10/8/99), 750 So.2d 179. However, this Court has routinely reviewed sentences for constitutional excessiveness, even absent a defendant's compliance with Article 881.1. State v. Anderson, 01-789, p. 8 (La.App. 5 Cir. 1/15/02), 807 So.2d 956, 961.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Munoz, 575 So.2d 848, 851 (La.App. 5 Cir.1991), writ denied, 577 So.2d 1009 (La.1991). The trial judge is given wide discretion in determining sentence, and if the record supports the sentence imposed, the Court of Appeal will not set aside a sentence for excessiveness. LSA-C.Cr.P. art. 881.4D; State v. Richmond, 98-1015, p. 8 (La.App. 5 Cir. 3/10/99), 734 So.2d 33, 38.
In the instant case, the predicate convictions alleged in the habitual offender bill of information were for an attempted armed robbery in 1991, and possession of cocaine with intent to distribute in 1994. As it was worded in 1997 when defendant committed the underlying offense,[4] LSA-R.S. 15:529.1A(1)(b)(ii) provided:
If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
On the basis of the underlying felony alone, the trial court was required to impose a life sentence. However, the court chose to deviate from the mandatory minimum, sentencing defendant to, instead, 33 years.
It is presumed that a mandatory minimum sentence under the Habitual Offender Law is constitutional. State v. Lindsey, 99-3256, p. 4 (La.10/17/00), 770 So.2d 339, 342; State v. Williams, 01-1007, p. 11 (La.App. 5 Cir. 2/26/02), 811 So.2d 1026, 1032. However, if a trial court finds that an enhanced punishment mandated by LSA-R.S. 15:529.1 makes "no measurable contribution to acceptable goals of punishment" or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," the trial court has the option and duty to reduce such sentence to one that would not be constitutionally excessive. State v. Dorthey, 623 So.2d 1276, 1280 (La.1993).
*178 At the time of sentencing, defense counsel argued that defendant had pled guilty to attempted armed robbery in 1991, not because he was guilty of the offense, but because he knew that a guilty plea would lead to his immediate release on probation. Counsel further argued that the amount of marijuana involved in the underlying case was so small that a life sentence would be grossly out of proportion to the offense. He stated that it was not the legislature's intent, in designing the Habitual Offender Law, to punish an offender such as defendant with a life sentence. Counsel moved the court to consider a downward deviation from the mandatory minimum under the Dorthey.
The trial court stated:
The minimum possible sentence is life imprisonment, and the maximum is the same. This Court sentences you, Shermond E. Esteen, to serve a period of thirty-three (33) years without benefit of probation or suspension of sentence. And for the record, I'm going to deviate from the life sentence due to the age and the type of crimes.
The State objected to the court's deviation. However, the State did not file a written motion to reconsider sentence. Nor do we find that the prosecutor's objection at the time of sentencing was sufficient to constitute an oral motion to reconsider under the provisions of LSA-C.Cr.P. art. 881.1. The question of whether the trial court erred in deviating from the mandatory minimum sentence is, therefore, not before this Court.
We do not believe that the 33-year sentence imposed is constitutionally excessive. The term is considerably less than the mandatory minimum. Moreover, the record shows that defendant has a more extensive criminal history than is reflected in the habitual offender bill of information. In fact, defendant was apparently on probation at the time he was arrested for the instant offense. We find that the sentence imposed is supported by the record.
We have reviewed the record for errors patent. La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990), and find none which merit our attention.
Accordingly, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The deputy's name is spelled "Ussein" in the trial transcript. However, the name was spelled Usian in the motion hearing transcript, and in State's Exhibit 2, a search warrant application prepared by Sergeant Vignes.
[2] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
[3] Defendant filed a Motion to Reconsider Sentence prior to his original sentencing. Since Article 881.1 requires that a motion to reconsider be filed within 30 days following the imposition of sentence, the motion was premature. Moreover, it was rendered moot by the fact that defendant's original sentence was subsequently vacated. The premature motion does not apply to defendant's habitual offender sentence.
[4] The applicable sentencing provisions are those in effect at the time the offense is committed. State v. Wright, 384 So.2d 399, 401 (1980).