869 So.2d 206 (2004)
STATE of Louisiana
v.
Terry PIERRE.
No. 03-KA-1306.
Court of Appeal of Louisiana, Fifth Circuit.
February 23, 2004.
*208 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, Jackie Maloney, Assistant District Attorneys, Gretna, LA, for the State of Louisiana, Plaintiff/Appellee.
Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, LA, for Terry Pierre, Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
A Jefferson Parish Grand Jury returned an indictment charging the defendant, Terry Pierre, and co-defendant, Avrell Walker, with distribution of heroin, a violation *209 of LSA-R.S. 40:966(A).[1] The defendant pled not guilty at arraignment. Before trial, the court denied the defendant's motion to exclude tape recorded conversations purported to have been made between the defendant and Brian Parent, a confidential informant, who was deceased at the time of trial.
The defendant proceeded to trial before a twelve-person jury, which found him guilty as charged on March 13, 2003. The trial judge denied the defendant's motions for new trial and post-verdict judgment of acquittal. On March 24, 2003, the defendant was sentenced to life imprisonment without benefit of probation or suspension of sentence. This timely appeal follows.

FACTS
At trial, Louisiana State Trooper Dickinson testified that Brian Parent was arrested for selling heroin in May of 2000. In exchange for the district attorney's agreement not to prosecute the heroin distribution charge against him, Parent agreed to become a confidential informant for the State Police. Thereafter, Parent consented to have his telephone calls taped between May 23, 2000 and May 23, 2001. A signed agreement evidencing this consent was introduced into evidence. Trooper Dickinson testified that Parent's job was to name individuals selling heroin in New Orleans and Jefferson Parish and to make phone calls to arrange controlled purchases between these individuals and undercover agents. According to Trooper Dickinson, Parent identified the defendant as a target in the investigation.
Pursuant to Trooper Dickinson's request, Parent placed a telephone call on July 21, 2000 to the defendant to arrange a sale of a bundle of heroin to an undercover officer posing as Parent's cousin for $350.[2] That day, Agent Moffett, who was the Drug Enforcement Administration's (DEA) agent in this investigation, and several other law enforcement officials set up surveillance at the Salvation Army Building on Jefferson Highway and Monticello. Before the transaction took place, Trooper Fitzpatrick drove around the area to conduct pre-operational surveillance. Trooper Fitzpatrick testified that he observed the defendant driving a Ford Bronco on Monticello before the transaction, and he saw the Bronco twice more during the transaction.
Trooper Bradley, the officer who posed as Parent's cousin, testified that, on July 21, 2000, he was in the parking lot of the Salvation Army Building with Parent, who was driving the vehicle. A black female, later identified as Avril Walker, walked past the truck into the thrift store. She exited shortly thereafter and approached the driver's side of the vehicle. Walker handed Parent tissue paper containing foils, and Trooper Bradley handed Parent $350, which he gave to Walker. A videotape of this transaction was introduced into evidence and played for the jury while Trooper Bradley narrated.
Trooper Schmidt was called to testify. He stated that he observed Walker enter the thrift store and exit with a shopping bag after the transaction was completed. She walked south on Monticello toward the Bronco, which was parked on the side of the road. According to Trooper Schmidt, Walker was still heading toward the Bronco when the case officers decided to terminate the surveillance. After the transaction, the items in the tissue paper, which *210 were 26 foils, tested positive for the presence of heroin.
Avril Walker testified that she had known the defendant all of her life, and had known Parent since 1984. Walker said that she and Parent smoked crack together every day until she was ultimately arrested in August of 2001.[3] Walker admitted that she had two prior convictions, one for possession of a "pipe" and one for distribution of cocaine. Walker further acknowledged that she had entered into an agreement in which she would plead guilty to possession of heroin, instead of distribution, and would receive a ten-year sentence, subject to the court's approval. The State also agreed not to file a multiple bill against her. In return, she agreed to testify against her suppliers. Walker said that the supplier in this heroin case was the defendant, Terry Pierre.
Walker testified that Parent called her early on July 21, 2000 and asked her to page the defendant. Parent wanted her to input his beeper number, and Walker complied. Walker testified that the defendant drove by her house later that morning and asked her if she knew Brian's cousin. She replied negatively, but that she knew of him. The defendant told her that the heroin was on the "Pigeon town side of the levee by the Water Board, by the fence in a napkin on the ground." Thereafter, Walker walked to the described location, found the heroin and brought it to Parent at the Salvation Army. In exchange for the heroin, Parent handed her $350. Walker testified that she was to be paid $20 to deliver the heroin, but instead she kept the entire $350. Walker said that she used all of the money to smoke crack cocaine. She stated that she saw the defendant the next day, but they did not discuss the money that she kept. Walker said that she and the defendant did not speak again until the day she was arrested because she "messed up" by "smok[ing] the money."
At trial, Avril Walker identified the voices of Parent and the defendant on taped phone conversations. In the first conversation, Parent called the defendant and said that he was with his cousin and was ready to get "this bundle." The defendant told Parent that he would have to come alone and that he was not trying to meet anyone new. The defendant mentioned that "Brian" could go get "it" from Avril, and they discussed locations. In the next conversation, Parent confirmed that the defendant was going to give "it" to Avril. Parent told the defendant to tell Avril to meet him at the Salvation Army at 3:00 p.m., and the defendant replied, "all right."
By the time of trial, Parent had died as a result of an unrelated domestic disturbance.

DISCUSSION
On appeal, the defendant argues that the evidence was insufficient to establish beyond a reasonable doubt that he committed this crime.[4] He contends that the evidence presented at trial was legally insufficient to support his conviction because the State failed to prove beyond a reasonable doubt that he acted with Avril Walker to deliver the heroin to Parent. *211 According to the defendant, Walker's testimony was not credible in light of her plea agreement with the State that reduced her sentencing exposure from life to ten years of imprisonment.
In reviewing the sufficiency of evidence, this Court must determine whether, viewing the evidence, direct and circumstantial, in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 82. To support a conviction of LSA-R.S. 40:966(A), the State must prove that the defendant distributed a controlled dangerous substance classified in Schedule I. Heroin is a Schedule I controlled dangerous substance. LSA-R.S. 40:963(B)(11). The term "distribute" is defined as "to deliver a controlled dangerous substance ... by physical delivery." LSA-R.S. 40:961(14). Delivery is defined as the "transfer of a controlled dangerous substance whether or not there exists an agency relationship." LSA-R.S. 40:961(10). Delivery has also been jurisprudentially defined as transferring possession and control. State v. Celestine, 95-1393 (La.1/26/96), 671 So.2d 896, 897.
A defendant may be guilty of distribution as a principal if he "aids and abets in the distribution or if he directly or indirectly counsels or procures another to distribute a controlled dangerous substance." State v. Bartley, 00-1370 (La. App. 5 Cir. 2/14/01), 782 So.2d 29, 32-33, writ denied, 01-717 (La.2/22/02), 809 So.2d 981. To support a defendant's conviction as a principal, the State must show that the defendant had the requisite mental state for the crime. State v. Saylor, 01-451 (La.App. 5 Cir. 11/27/01), 802 So.2d 937, 941, writ denied, 01-3406 (La.10/4/02), 826 So.2d 1122. Distribution of a controlled dangerous substance only requires general intent. See State v. Banks, 307 So.2d 594, 596-597 (La.1975); State v. Ruffin, 02-798 (La.App. 5 Cir. 12/30/02), 836 So.2d 625, 631. General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. LSA-R.S. 14:10(2).
In State v. Staggers, 03-655 (La.App. 5 Cir. 10/28/03), 860 So.2d 174, this Court held that the evidence was sufficient to support the defendant's conviction as a principal to distribution of cocaine even though the defendant never dealt directly with the undercover agent. In State v. Rexrode, (La.App. 3 Cir.1988), 536 So.2d 671, the evidence was sufficient to prove the defendant was a principal to distribution of marijuana when the defendant indirectly produced a seller for marijuana. The defendant told the undercover agent that he did not have any marijuana, but instructed his roommate to inquire about the availability of marijuana at a nearby lounge. The roommate then found a person who ultimately sold marijuana to the undercover officer. The court concluded that the defendant was guilty as a principal to distribution because he had aided the illegal transfer of marijuana by indirectly procuring the party who actually consummated the sale. State v. Rexrode, 536 So.2d at 676.
In the present case, while the defendant was not directly involved in the transaction, the evidence reflects that the defendant facilitated the transaction and procured Avril Walker to deliver the heroin. According to Walker, the defendant described the precise location of the heroin and even described how it would be packaged. *212 After speaking to the defendant, Walker went to the location, picked up the heroin and delivered it to Parent in exchange for $350. Further, the defendant was seen driving a vehicle near the Salvation Army Building prior to and during the transaction.
Although the defendant contends that Walker's testimony was not believable, the jury obviously found otherwise. It is the role of the fact-finder to weigh the respective credibilities of the witnesses, and a reviewing court will not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983); State v. Wallace, 00-1745 (La.App. 5 Cir. 5/16/01), 788 So.2d 578, 584, writ denied, 01-1849 (La.5/24/02), 816 So.2d 297.
After reviewing the record, we find that the evidence was sufficient for rational jurors, viewing the evidence in the light most favorable to the prosecution, to conclude beyond a reasonable doubt that the defendant was a principal to distribution of heroin. Accordingly, this assignment of error is without merit.
The defendant further assigns on appeal that the trial court erred in admitting the taped conversations of Brian Parent at the trial, because the tapes were inadmissible hearsay and violated his constitutional right of confrontation.
The United States Constitution, Sixth Amendment, guarantees the right of the accused in a criminal prosecution to be confronted with witnesses against him. This right encompasses the right physically to face those who testify against him, and the right to conduct cross-examination. Coy v. Iowa, 487 U.S. 1012, 1017, 108 S.Ct. 2798, 2801, 101 L.Ed.2d 857 (1988). Additionally, the confrontation clause of the Louisiana Constitution Article I, Section 16 specifically affords the accused a right to cross-examine the witnesses against him.
On March 12, 2003, the day of trial, the defendant filed a motion seeking dismissal of the prosecution on the basis that his right of confrontation would be abridged by Parent's absence. He argued that, because Parent was dead, he could not cross-examine Parent about the taped conversations. After argument by the defense and the State, the trial judge denied the motion.
That same day, the defendant, through counsel, filed a motion to suppress the taped conversations on the basis that there was no evidence that either party gave consent to have the conversations recorded. The defendant asserted that the admission of the tapes would abridge his right to confront and cross-examine Parent on the voluntariness of Parent's consent because Parent was deceased. The State responded that Trooper Dickinson had obtained Parent's consent and that Parent had signed a written agreement evidencing his consent. The trial judge denied the motion to suppress the taped conversations.
The defendant contends in this assignment that the trial court erred by admitting the tapes, because they constituted inadmissible hearsay. The defendant raises this hearsay argument for the first time on appeal. Instead of hearsay, the defendant's motion to suppress was based on the inability to cross-examine Parent regarding his consent to have his phone conversations taped. In fact, defense counsel specifically stated that the basis of the motion was the "right of confrontation with Mr. Parent on the coerciveness of this consent, the duress of this consent, and so forth, and his unavailability for us to be *213 able to cross-examine him with regard to that consent."
Both this Court and the Louisiana Supreme Court have held that a new basis for an objection may not be raised for the first time on appeal. State v. Cooks, 97-999 (La.9/9/98), 720 So.2d 637, 644, cert. denied, 526 U.S. 1042, 119 S.Ct. 1342, 143 L.Ed.2d 505 (1999); State v. Myers, 584 So.2d 242, 255 (La.App. 5 Cir.1991), writ denied, 588 So.2d 105 (La.1991), cert. denied, 504 U.S. 912, 112 S.Ct. 1945, 118 L.Ed.2d 550 (1992). While the defendant contends that the judge erred in determining that the tapes were not inadmissible hearsay, the trial judge did not make such a ruling. As such, there is no hearsay ruling for this Court to review. In State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 77, writ denied, 98-264 (La.6/19/98), 719 So.2d 481, this Court addressed the defendant's assigned error only on the basis of the objection raised at trial, not the new basis urged for the first time on appeal. Accordingly, we review this assignment on the basis urged at trial, which was that the defendant's right of confrontation was abridged because he could not cross-examine Parent on the voluntariness of his consent to allow his telephone conversations to be recorded.
At the suppression hearing, the defendant argued that there was no evidence that either Parent or the defendant consented to the interception of the conversations. The Electronic Surveillance Act, LSA-R.S. 15:1301, et seq., generally prohibits the interception and disclosure of wire or oral communications. However, there are exceptions to this general prohibition, such as where one of the parties to the communication consents to its interception. LSA-R.S. 15:1303(C)(3) and (C)(4).
In State v. Esteen, 02-1241 (La.App. 5 Cir. 4/29/03), 846 So.2d 167, writ denied, 03-1486 (La.1/9/04), 862 So.2d 978, this Court held that a police officer's testimony was sufficient to show the voluntariness of a cooperating source's consent to a taped telephone conversation between the defendant and the source. In Esteen, the Jefferson Parish Sheriff's Office received information that one of their deputies was trafficking in cocaine. Further investigation revealed that the deputy was "experimenting" with cocaine and marijuana, and that the defendant was suspected to be the supplier of the marijuana. The deputy was taken into custody and agreed to cooperate in the investigation. The cooperating deputy agreed to telephone the defendant in an attempt to purchase marijuana, and the telephone conversation was recorded and monitored under police supervision. Id. at 171.
At a hearing on the defendant's motion to suppress the taped conversation, one of the police officers testified that the cooperating deputy had consented to having that officer listen in on the conversation. The officer further testified that he did not threaten the deputy or force him to make the telephone call. The cooperating deputy did not testify at the hearing or at trial, because he was "at large." The trial judge denied the motion, and the taped conversation was admitted at trial over the defendant's objection. State v. Esteen, supra at 173.
On appeal, the defendant contended that the trial judge erred in denying the motion to suppress the conversation in which the defendant and the cooperating deputy "purportedly discussed the purchase of marijuana." Id. at 176. This Court found that the police officer's testimony at the motion hearing was sufficient to establish the voluntariness of the cooperating deputy's consent. Further, this Court concluded that any prejudice that might have accrued to defendant was harmless, in *214 light of the evidence against defendant and because the conversation was "so ambiguous that it was not apparent what the subject of the conversation was." Id. at 176.
In the present case, Trooper Dickinson testified that Parent had voluntarily agreed to permit his conversations to be recorded between May 23, 2000 and May 23, 2001. He stated that Parent worked with the State Police as a confidential informant between one year and one year and a half. He further testified that Parent was never forced, threatened or coerced into making recorded phone calls. In this case and in State v. Esteen, taped conversations were admitted at trial, but the cooperating informant was not available to testify. Further, like the tapes in Esteen, the tapes in the present case could be construed to be ambiguous. The word "heroin" was never mentioned and some of the exchange on the tape is inaudible.
Considering the record before us and the caselaw, particularly State v. Esteen, we find that Trooper Dickinson's testimony at the motion hearing was sufficient to establish that Parent's consent was voluntary.[5] However, even if the tapes had not been admissible, the tapes were harmless.
Confrontation errors are subject to a harmless error analysis. State v. Louviere, 00-2085 (La.9/4/02), 833 So.2d 885, 905, cert. denied, ___ U.S. ___, 124 S.Ct. 56, 157 L.Ed.2d 52 (2003). When there are confrontation errors, the verdict may still stand if the reviewing court determines that the guilty verdict rendered in the particular trial is surely unattributable to the error. Id.
In the instant case, the State's evidence established that the defendant provided instructions to obtain the heroin and that the defendant was in the area of the transaction when it occurred. Avril Walker's testimony established that the defendant told her where to find the heroin and that she went to meet Parent after picking up the heroin. There was testimony from the officers at the scene that the defendant was driving a vehicle in the area of the drug transaction before and during the transaction. Based on the foregoing, even if these tapes should have been excluded, the guilty verdict was surely unattributable to any error in admitting the tapes. Furthermore, we note that even if a hearsay ruling had been made and were reviewable by this Court, the record reveals that the taped conversations that were monitored by the police were admissible as statements against interest, which is an exception to the hearsay rule. LSA-C.E. art. 804(B)(3). Accordingly, this assignment of error is without merit.
In his third and final assignment of error, the defendant argues that, based on recent legislation eliminating a mandatory life sentence for distribution of heroin, the mandatory minimum sentence of life imprisonment is unconstitutionally excessive.
The Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. A sentence is excessive if it is grossly disproportionate to the seriousness of the offense so as to shock our sense of justice, or if it imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992); *215 State v. Brown, 01-160 (La.App. 5 Cir. 5/30/01), 788 So.2d 667, 674.
Prior to June 15, 2001, LSA-R.S. 40:966(B)(1) provided that distribution of heroin was punishable by a mandatory sentence of life imprisonment without benefit of probation or suspension of sentence. The Louisiana Supreme Court has held that a mandatory sentence of life imprisonment for distribution of heroin is not unconstitutional. See Richardson v. La. Dep't of Public Safety and Corrections, 627 So.2d 635, 637 (La.1993), and the cases cited therein. See also State v. Jackson, 99-1368 (La.App. 5 Cir. 5/17/00), 762 So.2d 253, writ denied, 00-1948 (La.9/21/01), 797 So.2d 60, where this Court held that a mandatory life sentence for distribution of heroin was not unconstitutional despite the defendant's age, twenty-one, and the fact that distribution of heroin is a non-violent crime.
Mandatory sentences generally fall within the legislature's prerogative to determine the length of the sentence imposed for crimes classified as felonies. State v. Barberousse, 480 So.2d 273, 280 (La.1985). However, in State v. Dorthey, 623 So.2d 1276, 1280 (La.1993), the Louisiana Supreme Court recognized that a mandatory minimum sentence under the Habitual Offender Law may still be reviewed for constitutional excessiveness. In State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676, the Louisiana Supreme Court reexamined Dorthey, and outlined the criteria a defendant must meet in order to show that a mandatory minimum sentence under the Habitual Offender Law is constitutionally excessive. Although Dorthey involved a mandatory enhanced sentence, this Court has applied the principles set out in Dorthey to the review of mandatory life sentences other than those imposed under the Habitual Offender Law. See State v. Temple, 01-655 (La.App. 5 Cir. 12/12/01), 806 So.2d 697, 707, writ denied, 02-234 (La.1/31/03), 836 So.2d 58.
In order to rebut the presumption that a mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is "exceptional, which ... means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case." State v. Johnson, supra at 676. A sentencing court should exercise its authority to declare excessive a mandatory minimum sentence only under rare circumstances. State v. Lindsey, 99-3302 (La.10/17/00), 770 So.2d 339, 345.
Act 403 of the 2001 Regular Session, effective June 15, 2001, changed the penalty for distribution of heroin to not less than five nor more than fifty years at hard labor, at least five years of which shall be served without benefit of probation, or suspension of sentence. The Louisiana Supreme Court has held that the changes mandated by Act 403 do not apply to sentences imposed for crimes committed before the Act's effective date. State v. Barnes, 02-2059 (La.4/4/03), 845 So.2d 354; State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518, 520. The Sugasti court stated that, although a trial judge should consider the ameliorative changes in the law when imposing sentence, the trial judge should not derogate from the penalty provision in effect at the time of the commission of the offense. Id. at 521.
In the present case, the defendant urged the trial judge to consider the recent reduction of the penalty for distribution of heroin at the hearing on his motion for new trial and objected to the sentence as excessive on this basis at sentencing. However, the defendant did not urge the court to consider a downward departure *216 from the mandatory sentence under Dorthey or Johnson, and he did not set forth exceptional circumstances warranting a downward departure. Further, the defendant did not offer any evidence to rebut the presumption that the mandatory sentence is constitutional. At the hearing on the motion for new trial, the judge stated that he was aware of the recent change in the law, and that life imprisonment was a "harsh" penalty, but emphasized that our supreme court has held that the appropriate penalty provision is the law in effect at the time of the offense. At sentencing, the court imposed the life sentence, noting that the law in effect at the time of his offense provided for the mandatory penalty.
In State v. Harris, 02-873 (La.App. 5 Cir. 1/28/03), 839 So.2d 291, 295, writ denied, 03-0846 (La.10/31/03), 857 So.2d 474, the defendant made no argument and presented no evidence regarding a downward departure from the mandatory minimum life sentence. As such, this Court held that defendant failed to carry his burden under Johnson, and concluded that the defendant's life sentence is not excessive.
In this case, the defendant failed to make any argument or present any evidence in support of a downward departure from the mandatory minimum life sentence. Accordingly, we conclude that the defendant failed to meet his burden of showing that the mandatory life sentence that he received is unconstitutional. Therefore, this assignment of error is without merit.
Finally, the record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals no errors patent in this case that require correction.

DECREE
For the reasons set forth above, we affirm the defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] In the transcript, Walker's first name is spelled "Avril," while it is spelled "Avrell" in the indictment. Hereinafter, Walker's first name is spelled Avril as it is in the transcript.
[2] Trooper Dickinson explained that a bundle of heroin contains 25 or 26 foils of heroin.
[3] At trial, the officers explained that the delay between the transaction and the arrest of Walker and the defendant was to protect the identity of the confidential informant.
[4] When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the appellate court first determines the sufficiency of the evidence. State v. Marcantel, 00-1629 (La.4/3/02), 815 So.2d 50, 55, citing, State v. Hearold, 603 So.2d 731, 734 (La.1992). Therefore, the error concerning the sufficiency of the evidence is considered first, even though it was assigned second.
[5] See also United States v. Gutierrez-Chavez, 842 F.2d 77, 81 (5th Cir.1988), wherein the court held that the admission of a recorded telephone conversation between a party cooperating with the DEA and the defendant did not violate defendant's right of confrontation.