JUDE G. GRAVOIS, Judge.
 

 12Pefendant Jeffery J. Butler appeals his conviction by a jury of possession of co
 
 *320
 
 caine, a violation of LSA-R.S. 40:967 C. Defendant received a sentence of five years at hard labor.
 
 [1]
 
 On appeal, he argues that the trial court erred in denying his motion to suppress evidence. Finding no error, we affirm defendant’s conviction.
 

 Factual Background and Procedural History
 

 Deputy Louis Adams of the Jefferson Parish Sheriffs Office testified at trial that on April 1, 2005, he responded to a report of suspicious persons and narcotics activity at the Zephyr Car Wash located at 5803 Airline Drive in Jefferson Parish. He was told to look for a black Mercury Cougar automobile with a particular license plate number.
 

 13When Deputy Adams arrived at the car wash, he saw two black men standing near a vehicle that met the description he had received. The deputy identified defendant as one of the men. Deputy Adams approached defendant on the passenger side of the car, while a backup officer, Deputy Steven Caravella, approached the second subject. Adams asked defendant if he had identification. Defendant replied that it was inside the car on the driver’s side. Adams followed defendant as he walked around the back of the car towards the driver’s side. He saw defendant hold out his hand and drop a rock of what appeared to be crack cocaine onto the car’s closed trunk.
 

 Deputy Adams testified that he picked up the rock and put it in his pocket. The officer then arrested defendant and handcuffed him. While handcuffing defendant, Deputy Adams found two additional rocks of what appeared to be crack cocaine in defendant’s clenched hand. Deputy Adams advised defendant of his rights and asked him if he would answer some questions. Defendant responded that he did not want to talk. After conducting a field interview with defendant’s companion, Adams released the companion. Adams then transported defendant to the Jefferson Parish Correctional Center.
 

 Deputy Adams identified State’s Exhibit 1 as the three off-white rocks he recovered. He testified that after he arrived at the Metairie lock-up with the defendant, he turned the evidence over to narcotics detective Wally Davis, who field tested the rocks. Davis testified that they tested positive for cocaine.
 

 Thomas Angelica, an expert in the identification of narcotics and a forensic scientist with the Jefferson Parish Crime Lab, testified that he tested the off-white material in State’s Exhibit 1, and the result was positive for cocaine.
 
 [2]
 
 He identified LState’s Exhibit 2 as his lab report on the matter. The report showed the net weight of the three rocks was .89 grams.
 

 Assignment of error
 

 Defendant’s only assignment of error is that the trial court erred by failing to suppress physical evidence (cocaine) gathered as the result of an illegal seizure. He contends Deputy Adams performed an illegal investigatory stop based on an uncorroborated tip. Defendant further argues he was illegally “seized,” and that the cocaine evidence obtained as a result of that seizure was tainted and therefore inadmissible.
 

 
 *321
 
 The State responds that defendant failed to preserve the suppression issue for appeal, since he did not file a written motion to suppress evidence prior to trial. The State argues that even assuming defendant is entitled to review on this issue, his arguments fail. The State maintains that the officers were free to approach defendant and question him, and that this initial contact did not rise to the level of an investigatory stop. The State further contends that defendant abandoned the first rock of crack cocaine without any prior unlawful intrusion by the officers, and Deputy Adams’s seizure of the rock was, therefore, lawful.
 

 Contrary to the State’s claim, defendant is not procedurally barred from challenging the trial court’s denial of his motion to suppress evidence. The record does not contain a written motion to suppress the evidence;
 
 [3]
 
 however, the State did not make a timely objection below to the sufficiency of defendant’s motion. There was a suppression hearing on August 21, 2008, and the trial court issued a ruling. [sThe Code of Criminal Procedure does not contain a procedural bar to defendant’s challenge of the trial court’s denial of his motion to suppress evidence.
 
 [4]
 

 Deputy Adams was the State’s only witness at the hearing on the motion to suppress evidence. He testified that on April 1, 2005, he received information that there were two black men and two white men engaged in drug activity at the Zephyr Car Wash. Deputy Adams was given the license plate number of the suspects’ vehicle.
 

 It only took Deputy Adams a couple of minutes to get to the car wash. When he arrived, he did not see any white men. He did see two black men, along with a car that met the description he had been given. He identified defendant as one of the men at the scene. The deputy approached defendant and questioned him about what was happening. He asked defendant if he had seen anyone in the neighborhood, and asked him for identification. According to Adams, defendant was not under arrest at that point.
 

 Defendant said his identification was on the driver’s side of the car. Deputy Adams testified that defendant was on the passenger side of the car when he first made contact with him. He told defendant to get the identification. Defendant then walked around the back of the car and the officer followed behind him. While they were walking, Deputy Adams saw a white rock fall out of defendant’s hand. Deputy Adams immediately picked up the rock and took custody of it. He secured defendant and told him he was under arrest. While handcuffing defendant, Deputy Adams found two more white rocks in defendant’s hand. The officer testified that defendant was booked on the cocaine charge, and that he also had three outstanding traffic attachments from the Ken-ner Police Department.
 

 |
 
 f)Analysis
 

 The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is
 
 *322
 
 exclusion of the evidence from trial.
 
 State v. Warmack,
 
 07-311, p. 4 (La.App. 5 Cir. 11/27/07), 973 So.2d 104, 107.
 

 In
 
 State v. Fisher,
 
 97-1133, pp. 4-5 (La.9/9/98), 720 So.2d 1179, 1182-83, citing
 
 United States v. Watson,
 
 953 F.2d 895, 897 n. 1 (5th Cir.1992),
 
 cert. denied,
 
 504 U.S. 928, 112 S.Ct. 1989, 118 L.Ed.2d 586 (1992), the Louisiana Supreme Court discussed a three-tiered analysis of interaction between citizens and police occurring under the Fourth Amendment:
 

 At the first tier, mere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention.
 

 At the second tier, the investigatory stop recognized by the United States Supreme Court in
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police officer may briefly seize a person if the officer has an objectively reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal conduct or is wanted for past criminal acts.
 

 At the third tier, a custodial “arrest,” the officer must have “probable cause” to believe that the person has committed a crime.
 

 (Citations and footnote omitted).
 

 Law enforcement officers are authorized to stop and interrogate persons reasonably suspected of criminal activity.
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968);
 
 State v. Belton,
 
 441 So.2d 1195, 1198 (La.1983),
 
 cert. denied,
 
 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). The
 
 Terry
 
 standard, as codified in LSA-C.Cr.P. art. 215.1, authorizes a police officer “to stop a person in a public place whom he reasonably suspects is committing, has |7committed, or is about to commit an offense and to demand that the person identify himself and explain his actions.”
 
 See State v. Young,
 
 05-702, pp. 7-8 (La.App. 5 Cir. 2/14/06), 938 So.2d 90, 96. The “reasonable suspicion” needed for an investigatory stop is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual’s right to be free from governmental interference.
 
 State v. Warmack,
 
 07-311 at 4-5, 973 So.2d at 107.
 

 In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703(D). The trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression.
 
 State v. Warmack, supra.
 
 To determine whether the trial court’s denial of the motion to suppress is correct, the appellate court may consider the evidence adduced at the suppression hearing as well as the evidence presented at trial.
 
 State v. Young,
 
 05-702 at 8, 938 So.2d at 96-97.
 

 Contrary to defendant’s arguments, Deputy Adams did not require reasonable suspicion to approach defendant, speak with him, and ask him for identification. It is well settled that:
 

 [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.
 

 Florida v. Royer,
 
 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983).
 
 See also Florida v. Bostick,
 
 501 U.S. 429,
 
 *323
 
 439, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991). In
 
 State v. Lewis,
 
 00-3136, p. 3 (La.4/26/02), 815 So.2d 818, 820,
 
 cert. denied,
 
 537 U.S. 922, 123 S.Ct. 312, 154 L.Ed.2d 211 (2002), the Louisiana Supreme Court commented that “[a]n officer’s request for identification does not turn the encounter into a forcible detention unless the request is accompanied by an unmistakable show of official authority indicating to the person that he or she is not free to leave.”
 

 There is no indication in the record that defendant was not free to disregard Deputy Adams when he spoke to him. In fact, Adams’s uncontested testimony shows that defendant was not in custody or detained before he dropped or threw down the first white rock. According to Adams, defendant could have gotten into the car and left the scene after he was asked for his identification. The verbal contact, by itself, involved the first tier of
 
 Fisher,
 
 and did not implicate Fourth Amendment concerns of detention or coercion.
 

 According to Deputy Adams, defendant either dropped or threw down the first white rock. Because defendant was not seized within the meaning of the Fourth Amendment when he abandoned the evidence, the officer did not violate defendant’s rights by retrieving it.
 
 State v. Tucker,
 
 626 So.2d 707, 710 (La.1993). Once Deputy Adams saw the first white rock and tentatively identified it as crack cocaine,
 
 [5]
 
 he had probable cause to arrest defendant. The two rocks Deputy Adams recovered from defendant while handcuffing him were seized in a valid search incident to arrest, one of the recognized exceptions to the Fourth Amendment’s warrant requirement.
 
 Chimel v. California,
 
 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969);
 
 State v. Andrishok,
 
 434 So.2d 389, 391 (La. 1983).
 

 The preponderance of the evidence at the suppression hearing and at trial did not favor suppression of the cocaine evidence in this case. The trial court did not err in denying defendant’s motion to suppress.
 

 |
 
 ¡¡Error Patent
 
 Discussion
 
 [6]
 

 The record reveals that the trial court failed to observe the 24-hour delay between denial of defendant’s motion for new trial and sentencing required under LSA-C.Cr.P. art. 873. Defendant did not waive the statutory delay.
 

 Generally, when a defendant challenges a non-mandatory sentence and the delay is not waived, his sentence must be vacated and the case remanded for re-sentencing.
 
 State v. Jones,
 
 07-271, p. 10 (La.App. 5 Cir. 10/30/07), 970 So.2d 1143, 1149.
 

 This Court has found, however, that when a defendant does not waive the 24-hour delay afforded by Article 873, but does not challenge the sentence imposed, the error may be harmless.
 
 State v. Williams,
 
 08-272, p. 9 (La.App. 5 Cir. 12/16/08), 3 So.3d 526, 532;
 
 [7]
 
 citing
 
 State v.
 
 
 *324
 

 White,
 
 404 So.2d 1202, 1204 (La.1981);
 
 State v. Alexander,
 
 98-993 (La.App. 5 Cir. 3/10/99), 734 So.2d 43, 48,
 
 writ denied,
 
 99-2138 (La.12/10/99), 751 So.2d 250. While defendant did not waive the delay for sentencing, he did not object to the sentence in the trial court or raise any issue regarding his sentence on appeal. Accordingly, no corrective action is necessary.
 

 The commitment reflects that the trial court advised defendant of the two-year prescriptive period for filing an application for post-conviction relief under LSA-C.Cr.P. art. 930.8, but the sentencing transcript does not show that the court so instructed defendant. Where there is a discrepancy between the transcript and a minute entry, the transcript prevails.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La. 1983). Accordingly, we remand this matter to the district court with an order to inform defendant of the Article 930.8 prescriptive period by sending written notice to defendant within ten days of the rendering of this opinion and to file written proof in the record that defendant received such notice.
 

 Conclusion
 

 Defendant’s conviction is affirmed. This matter is remanded to the district court with instructions to inform defendant of the Article 930.8 prescriptive period by sending written notice to defendant within ten days of the rendering of this opinion and to file written proof in the record that defendant received such notice.
 

 AFFIRMED; REMANDED WITH INSTRUCTIONS.
 

 [1]
 

 . On the day defendant was sentenced, the state filed a habitual offender bill of information, alleging defendant to be a fourth felony offender. The habitual offender disposition is not included in the appeal record, and is not a part of this appeal.
 

 [2]
 

 . Mr. Angelica stated that he randomly selected one of the three rocks to test, and that he did not test the other two rocks.
 

 [3]
 

 . A motion to suppress should be in writing.
 
 State v. Royal,
 
 255 La. 617, 232 So.2d 292, 621-22 (1970).
 

 [4]
 

 .
 
 See
 
 LSA-C.Cr.P. arts. 521 and 703;
 
 State v. Simmons,
 
 08-269, p. 9 (La.App. 5 Cir. 10/28/08), 996 So.2d 1177, 1182, n. 1;
 
 State v. Davis,
 
 02-1008, p. 4 (La.App. 5 Cir. 2/25/03), 841 So.2d 952, 958,
 
 writ denied,
 
 03-0948 (La. 11/7/03), 857 So.2d 516.
 

 [5]
 

 . At trial, Deputy Adams testified that he has seen crack cocaine thousands of times during his law enforcement career, and his experience told him the white rock was consistent with crack cocaine.
 

 [6]
 

 . The record was reviewed for errors patent. LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La. 1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir. 1990).
 

 [7]
 

 .According to this Court’s records, the defendant in
 
 Williams
 
 has filed two writ applications in the Louisiana Supreme Court, Writs No. 09-KO-143 and 09-KO-149. As of the date of this opinion, the Supreme Court has taken no action on these writs.