SUSAN M. CHEHARDY, Judge.
li>On April 1, 2010, the Jefferson Parish District Attorney filed a bill of information charging Joneisha Terrance with violation of La. R.S. 40:966(A), distribution of marijuana. The defendant was arraigned on April 26, 2010, and pleaded not guilty. On June 24, 2010, the defendant filed a motion to appoint a sanity commission to determine her competency to stand trial. After a sanity hearing on August 18, 2010, the trial judge found the defendant competent to stand trial. On August 24 and 25, 2010, the case was tried before a 12-person jury that found the defendant guilty as charged.
The defendant filed a motion in arrest of judgment or, alternatively, for new trial, which was denied after a hearing on September 29, 2010. On that date, the trial judge sentenced the defendant to imprisonment at hard labor for eight years, with four years suspended, and placed the defendant on active probation for five years upon her release from prison. The defendant also filed a motion for appeal on September 29, 2010, which was granted.
On October 21, 2010, the defendant filed a motion to reconsider sentence, which was denied after a hearing on January 28, 2011. On January 10, 2011, the defendant filed a motion for out-of-time appeal, which was denied as moot on January 19, 2011.
*563 laFACTS
On September 4, 2009 at approximately 3:40 p.m., Deputy Billie Nunamaker, an undercover agent with the Jefferson Parish Sheriffs Office, went to East Monterrey Court off Behrman Highway, a high-crime/high-narcotics area, in an attempt to purchase narcotics. Deputy Nunamaker was driving an unmarked vehicle equipped with audio and video equipment to record any narcotics transactions that occurred. Detective Brian Rico of the Gretna Police Department and other officers had established surveillance in that area.
Deputy Nunamaker pulled up to a location and signaled to a man standing in front of the residence that she wanted to buy some marijuana. The man pointed in the direction of the defendant, who was standing nearby on a sidewalk, and an unknown male who was riding around the defendant on a bicycle. Nunamaker proceeded to the place where the defendant and the unknown male were positioned. The defendant walked around the back of Nunamaker’s vehicle to the driver’s side. Nunamaker asked the defendant for some “weed” and if she had a twenty,” and the defendant replied, “Where’s the money?”
Deputy Nunamaker responded that she was not going to give her the money because last time she was in that area to purchase narcotics, she gave money to somebody who took it and left. The defendant pointed toward 952 East Monterrey and said she lived right there in Apartment B. The defendant then told the unknown male on the bicycle that Nunamaker wanted to purchase marijuana. At that point, Nunamaker knew that the defendant and the unknown male were working together.
The unknown male pulled four bags of marijuana from his pocket and handed them to Deputy Nunamaker. He had other marijuana in his hand, which he put back into his pocket. The defendant put her hand in the window of |4Nunamaker’s vehicle, apparently expecting to get the money. Nunamaker, however, gave the $20.00 to the unknown male.
Deputy Nunamaker asked the defendant and the unknown male for their names and phone numbers, but the unknown male left the area. The defendant asked for a light and gave Nunamaker her phone number. Nunamaker asked the defendant whether she could come back and see the defendant, and the defendant pointed to where she lived and replied affirmatively.
The videotape of the transaction was shown to the jury.
Detective Rico testified he viewed the videotape of the transaction and was able to identify the defendant. He generated a photographic lineup and showed it to Deputy Nunamaker, who positively identified the defendant as one of the two individuals who sold her marijuana on the day in question.
Detective Rico, who was accepted as an expert in the field of narcotics investigations and the packaging and sale of narcotics, testified it is common for subjects to work in tandem to sell drugs. He explained that person A will engage the buyer in conversation while person B holds the drugs. If person A feels comfortable with the buyer, person A will then give person B a hand signal or tell them to come over to sell the drugs. Rico testified that it was common for the person holding the drugs to take the money in order to maintain the “point person” as “clean.” In Deputy Rico’s expert opinion, the defendant and the other subject were working in tandem when they sold marijuana to the undercover agent. Rico said further that it was his opinion that defendant held her hand out in anticipation of receiving the funds of the drug transaction.
*564 Detective Rico asserted that the marijuana in this case was packaged in four “nickel” bags in five-dollar increments for a total of twenty dollars. He stated that the undercover agent requested “twenty” because it is the most common | ¿denomination when purchasing marijuana. Rico stated that the marijuana was already prepackaged, which suggested to him a predisposition to engage in the sale of narcotics.
Raven Barrois, a forensic chemist with the Jefferson Parish Sheriffs Office Crime Laboratory, testified that the evidence in this case was positive for marijuana.
The defendant testified that the undercover agent stopped in front of her door where she used to live and talked to a male. The defendant explained that she was walking toward the bus stop to wait for her son because he got out of school at 4:00 p.m., and the school bus came at 4:10 p.m. When the agent spoke to her, the defendant walked over to see if she knew her. The defendant claimed she told the agent where she lived and gave the agent her phone number because she is bisexual and was interested in pursuing a romantic relationship with the agent.
The defendant contended that the agent was engaged in a narcotics transaction with the male, and that she did not know the male. She admitted that when the agent asked her if she had any marijuana, she in turn asked the agent where her money was. The defendant explained that the agent wanted a “twenty,” but that the male heard “two days,” so she assisted by telling the male that the agent wanted a “twenty.” The defendant stated that the male then gave the agent four bags. The defendant testified that she did not sell drugs, did not know the male on the bicycle, and was not working with the male. She claimed she was holding her hand out because she wanted a light for her cigarette, and not because she was expecting to get money. The defendant said she was not trying to get the agent to come back for drugs, but she wanted the agent to come back to pursue a romantic relationship with her. She denied selling drugs to the agent on the day in question.
|r,On rebuttal, Deputy Nunamaker testified she did not get the impression that the defendant was trying to “hit on her.” She testified further that even if the defendant was trying to “hit on her,” she had no doubt that the defendant also was conducting a narcotics transaction as well.
ASSIGNMENT OF ERROR NUMBER ONE
The defendant asserts it was reversible error for the trial court to accept the jury’s guilty verdict against the defendant when the record reflects the defendant has been diagnosed as a paranoid schizophrenic and as bipolar, which made it virtually impossible for her to have criminal intent to commit the crime.
The defendant claims she was standing outside her apartment building, waiting for her son’s school bus to arrive. She saw a woman walking up the street to whom she was immediately attracted. She crossed the street with the hope of getting the woman’s name and telephone number. The woman asked for a twenty, and the defendant struck up a conversation with the hope of getting the woman’s name and telephone number. The woman was interested in seeing the drugs, but the defendant only wanted to show the woman where she lived, and to get a date and time for when she could expect her to come over.
The defendant asserts she was “clearly not on the same page” as this female undercover officer. The defendant claims she was so consumed with this woman that *565 she was oblivious to the man riding around her on a bicycle discussing a drug transaction with the undercover officer.
The defendant argues that without the necessary intent, none of her actions can be used to convict her of the instant crime. She asserts this Court must find that the State failed to meet its burden of proof under the Jackson standard of review.[1]
|7The defendant argues the evidence was insufficient to support the conviction. She contends the State did not prove she intended to sell the marijuana to the undercover agent. The defendant asserts her sole objective during her interaction with the undercover agent was to obtain intimate time with her, and not to sell her drugs. She notes that the drugs were not in her possession, and she did not hand them over to the agent during the drug transaction. The defendant also argues that the State did not prove she had the intent to commit the crime, considering the seriousness of her mental illness and the medications she was taking for it both before and during the drug transaction.
Alternatively, the defendant asserts the trial judge erred by denying the motion for a new trial after learning of her extensive history of mental illness.
The State responds that at the trial and at the hearing on the motion for new trial the defendant presented no evidence of mental illness or medications taken for it and how they may have affected her ability to formulate criminal intent at the time of the offense. It contends that the defendant only presented evidence regarding mental illness at the time of sentencing as a mitigating factor. The State argues that the defendant did not enter a plea of not guilty by reason of insanity and, therefore, evidence of mental defect at the time of the offense was not admissible at trial or on appeal under La.C.Cr.P. art. 651.[2] Nevertheless, the State submits that the evidence at trial was sufficient to convict the defendant of the charged offense, noting that a rational trier of fact reasonably could have inferred from the circumstances that the defendant acted in tandem with the unknown male to distribute marijuana.
On September 27, 2010, the defendant filed a motion in arrest of judgment and an alternative motion for new trial, arguing that the guilty verdict was contrary |sto the law and the evidence, and that the State presented no credible evidence that she committed a crime. At the hearing, defense counsel argued that the verdict was contrary to the evidence presented at trial. After hearing arguments of counsel, the trial judge denied the motion, finding there was substantial evidence against defendant to warrant such a verdict.
The question of sufficiency of the evidence is properly raised by a motion for post-verdict judgment of acquittal. La. C.Cr.P. art. 821;[3] State v. Hampton, 98-331, p. 12 (La.4/23/99), 750 So.2d 867, 880, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999); State v. Pearson, 07-332, p. 12 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 653.
Instead of moving for a post-verdict judgment of acquittal, the defendant filed a motion in arrest of judgment. La. *566 C.Cr.P. art. 859 lists the grounds for arrest of judgment; insufficiency of the evidence is not among the listed grounds. The grounds listed in La.C.Cr.P. art. 859 are exclusive and, thus, a court cannot entertain any other grounds when considering a motion in arrest of judgment. State v. Ijaz, 427 So.2d 848, 850 (La.1983).
“A motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.” La.C.Cr.P. art. 851.
The trial court’s ruling on a motion for a new trial will not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Delagardelle, 06-898, p. 6 (La.App. 5 Cir. 4/11/07), 957 So.2d 825, 829, writ denied, 07-1067 (La.11/21/07), 967 So.2d 1154.
| nOn motion of the defendant, the court shall grant a new trial whenever the verdict is contrary to the law and the evidence. La. C.Cr.P. art. 851(1). When a motion for new trial is based on the verdict being contrary to the law and the evidence, there is nothing for review on appeal. State v. Condley, 04-1349, p. 11 (La.App. 5 Cir. 5/31/05), 904 So.2d 881, 888, writ denied, 05-1760 (La.2/10/06), 924 So.2d 163. Both the Louisiana Supreme Court and this Court have addressed the constitutional issue of the sufficiency of the evidence under this circumstance, however. Id. Therefore, the denial of the defendant’s motion for new trial based on the sufficiency of the evidence is properly before this Court on review.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
In cases involving circumstantial evidence, the trial court must instruct the jury that, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. State v. Mitchell, 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83; State v. Washington, 03-1135, p. 4 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 977. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. Id.
| ipThe defendant was convicted of distribution of marijuana. La. R.S. 40:966(A)(1) provides, in pertinent part, that it is unlawful for any person knowingly or intentionally to distribute a controlled dangerous substance classified in Schedule I. As such, to support a conviction under La. R.S. 40:966(A), the State must prove that the defendant distributed a controlled dangerous substance classified in Schedule I. State v. Pierre, 03-1306, p. 6 (La.App. 5 Cir. 2/23/04), 869 So.2d 206, 211, writ denied, 04-0959 (La.10/1/04), 883 So.2d 1006. Marijuana is a controlled dangerous substance classified in Schedule I. LSA-R.S. 40:964.[4]
*567 The term “distribute,” as it is used in the Uniform Controlled Dangerous Substances Law, means “to deliver a controlled dangerous substance whether by-physical delivery, administering, subterfuge, furnishing a prescription, or by filling, packaging, labeling or compounding the substance pursuant to a lawful order of a practitioner.” La. R.S. 40:961(14). The term “deliver” means “the transfer of a controlled dangerous substance whether or not there exists an agency relationship.” La. R.S. 40:961(10).
Delivery has also been jurisprudentially defined as transferring possession or control. State v. Celestine, 95-1393, p. 3 (La.1/26/96), 671 So.2d 896, 897; State v. Pierre, supra.
A defendant may be found guilty of distribution as a principal to the offense if he “aids and abets in the distribution or if he directly or indirectly counsels or procures another to distribute a controlled dangerous substance.” State v. Bartley, 00-1370, p. 5 (La.App. 5 Cir. 2/14/01), 782 So.2d 29, 32-33, writ denied, 01-0717 (La.2/22/02), 809 So.2d 981. See also, La.R.S. 14:24.
InAn individual may only be convicted as a principal to a crime for which he personally has the requisite mental state. State v. Carey, 04-1073, p. 6 (La.App. 5 Cir. 3/29/05), 901 So.2d 509, 512. Thus, mere presence at the scene of a crime does not make one a principal to the crime. Id.
Distribution of a controlled dangerous substance is a general intent crime. State v. Pierre, supra. See also, State v. Banks, 307 So.2d 594, 596-597 (La.1975). “General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.” La. R.S. 14:10(2).
In State v. Brown, 05-102, p. 9 (La.App. 5 Cir. 5/31/05), 904 So.2d 805, 810, writ denied, 06-1287 (La.1/26/07), 948 So.2d 159, this Court found that the defendant specifically intended for the seller to deliver the cocaine to the buyer and that he facilitated the delivery by locating someone to sell drugs to the buyer and by bringing the seller to the buyer for that purpose. This Court found further that the evidence was sufficient to prove that the defendant acted as an intermediary to arrange the transfer of cocaine from the seller to the buyer, noting that one who acts as an intermediary can be charged and punished as a principal in the act of distribution.
Similarly, in State v. Black, 03-911, pp. 5-6 (La.App. 5 Cir. 12/30/03), 864 So.2d 836, 840, this Court stated that although the defendant did not hand the oxycodone pills to the undercover agent and the undercover agent did not hand the money to the defendant, the undercover agent’s testimony established that the defendant arranged the transaction with the seller and procured the seller to sell the pills to the undercover agent. This Court found that rational jurors, viewing the evidence in the light most favorable to the prosecution, could have concluded |12beyond a reasonable doubt that the defendant was a principal to distribution of oxycodone. Id.
Likewise, in State v. Smith, 05-951, p. 7 (La.App. 5 Cir. 6/28/06), 934 So.2d 269, 274-275, writ denied, 06-2930 (La.9/28/07), 964 So.2d 357, this Court found that the jury could reasonably have inferred from the videotape and from the detective’s tes *568 timony that the defendant had arranged with his alleged cohort to assist him in selling narcotics by taking potential buyers to him, even though it was the cohort, and not the defendant, who gave the narcotics to the undercover agent and received the money from the agent. In that case, however, the cohort then gave marijuana to the defendant in an apparent form of payment.
In the instant case, the State presented evidence to show that the defendant was a principal to the distribution of marijuana. The evidence reflects that the undercover agent signaled to a man standing in front of a residence that she wanted to purchase marijuana. That man pointed her in the direction of the defendant and an unknown male who was circling the defendant on a bicycle. The undercover agent drove over to the defendant and asked her if she had some “weed.” The defendant then asked for the agent’s money. When the undercover agent refused to give her the money, the defendant turned to the unknown male riding a bicycle around her and told him that the agent wanted marijuana. The unknown male pulled out four prepackaged bags of marijuana and handed them to the agent, who in turn handed the man $20.00. Afterward, the undercover agent discussed with the defendant the possibility of returning to the area to see her.
In addition, Detective Rico gave his expert opinion that defendant and the unknown male were working in tandem when they sold marijuana to the agent, and that the marijuana was prepackaged, which suggested to him a predisposition to engage in the sale of narcotics.
| isThe defendant, on the other hand, testified she did not sell marijuana to the agent and did not know the man on the bicycle. She claimed that she told the agent where she lived and gave her phone number to the agent because she wanted to pursue a romantic relationship with the agent.
The jury obviously believed the State’s witnesses and rejected the defendant’s story.
The question of the credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Rowan, 97-21, p. 7 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. The credibility of the witnesses will not be reweighed on appeal. Id.
The defendant argues that the State did not prove she had the intent to commit the crime, considering the seriousness of her mental illness and the medications she was taking for it both before and during the drug transaction.
Prior to trial, the defendant filed a motion to appoint a sanity commission to determine her competency to stand trial. At the sanity hearing on August 18, 2010, the State and the defense stipulated that if Dr. Rafael Salcedo and Dr. Richard Ri-choux were called to testify, they would qualify as experts in the fields of forensic psychology and forensic psychiatry, respectively, and that each would testify consistently with the report they prepared and submitted to the court. That report recommended the defendant be found competent. The trial judge ruled the defendant was competent to stand trial.[5]
At trial and at the hearing on the motion for new trial, there was no evidence presented that the defendant was mentally ill or taking medications for that illness before or during the offense. The only mention of mental illness was presented at the sentencing hearing, when defense counsel *569 asked the trial judge to consider that 114even though the defendant met the Bennett criteria, she was a paranoid schizophrenic who was taking Depakote, Risper-dal, and Cogentin.[6] At the sentencing hearing defense counsel also mentioned that when interviewed by the psychiatrist, the defendant was bipolar schizoaffective, had a history of psychiatric problems, and was on disability and unable to work because of her psychiatric problems. Defense counsel did not introduce any evidence at the sentencing hearing to support these statements, however.
La.C.Cr.P. art. 651 provides, “When a defendant is tried on a plea of ‘not guilty, evidence of insanity or mental defect at the time of the offense shall not be admissible.” The defendant entered a “not guilty” plea to the charge of distribution of marijuana. Therefore, even if evidence of her alleged mental illness had been introduced at trial, it would have been deemed inadmissible. Further, evidence of the defendant’s alleged mental illness was not introduced at the hearing on the motion for new trial, so the trial judge could not have taken it into account.
In light of the foregoing, we find that a rational trier of fact reasonably could have inferred from the videotape and from Deputy Nunamaker’s testimony that under the Jackson standard the defendant was guilty of being a principal to the distribution of marijuana.
J^ERROR PATENT DISCUSSION
The record was reviewed for errors patent. La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337, 338 (La.1975); State v. Wetland, 556 So.2d 175, 178 (La.App. 5 Cir.1990). We find three patent errors. None require correction, but they are worthy of discussion.
Sentencing Delays
The trial judge failed to observe the required 24-hour delay between the denial of the motion for new trial and the imposition of sentence, as required by La. C.Cr.P. art. 873. The defendant did not waive the statutory delay.
Generally, when a defendant challenges a non-mandatory sentence and the delay is not waived, his sentence must be vacated and the case remanded for re-sentencing. State v. Jones, 07-271, p. 10 (La.App. 5 Cir. 10/30/07), 970 So.2d 1143, 1149. This Court has found, however, that when a defendant does not waive the 24-hour delay afforded by Article 873, but does not challenge the sentence imposed, the error may be harmless. State v. *570 Williams, 08-272, p. 9 (La.App. 5 Cir. 12/16/08), 3 So.3d 526, 532, writ denied, 09-143 (La.10/16/09), 19 So.3d 470.
Although the defendant did not waive the delay for sentencing, she did not challenge the sentence on appeal, except to state that it was unclear whether her probationary period was four or five years (see “Indeterminate Sentence” discussion, below). Accordingly, we find that no corrective action is necessary. State v. Butler, 09-314, p. 9 (La.App. 5 Cir. 10/27/09), 28 So.3d 317, 323-24, writ denied, 10-595 (La.10/29/10), 46 So.3d 673.
Indeterminate Sentence
La.C.Cr.P. art. 879 requires a court to impose a determinate sentence.
At the sentencing hearing on September 29, 2010, the trial judge sentenced the defendant to imprisonment in the Department of Corrections for eight years | lfiwith four years suspended and five years of active probation upon release from prison. At the hearing on the motion to reconsider sentence on January 28, 2011, however, after the trial judge denied the motion she said she believed the sentence of eight years, with four years in the Department of Corrections and four years being served on probation, was not excessive.
The commitment, dated September 29, 2010, indicates that probation was for five years. The minute entry dated January 28, 2011, does not mention that the trial judge said the probationary period was for four years.
The sentence here may be indeterminate if it is unclear whether the trial judge intended for the defendant to be placed on probation for four or five years.
In her brief the defendant requests that the matter be remanded to the district court for clarification of the amount of time the defendant is expected to serve on active probation.
The State responds in its brief that there was a bench conference at the time of sentencing that reflects a full discussion as to the time the defendant would serve on probation. The bench conference to which the State refers occurred near the end of the sentencing hearing.
At the sentencing hearing, the judge’s statements regarding the sentence were as follows:
THE COURT:
All right. At this time I’m going to sentence the defendant to eight years in the Department of Corrections. I will suspend four years of that sentence. She will serve four years in DOC and be placed on active probation upon her release for a period of five years....
MS. WIGGINS [defense counsel]:
Your Honor, may we approach?
THE COURT:
Yes.
|,7(AT THE BENCH)
MS. WIGGINS:
You sentenced her to eight years, but doesn’t she have to serve at least five—
THE COURT:
No.
[[Image here]]
MS. WIGGINS:
I just want to make sure. Probation always is five.
THE COURT:
That’s what I’ve given her.... I’ve given her eight years which is more than five.... I’ve suspended four.... And she’s got five years’ probation.
At the hearing on the motion to reconsider sentence, the judge stated, “The Court ... firmly believes that a split sentence of eight years, with only four years being served in D.O.C. and four years *571 being served on probation, is not excessive.”
Considering that the trial judge originally stated at the sentencing hearing that probation was for five years, the commitment reflects that probation was five years, the trial judge denied the motion to reconsider sentence, and the minute entry in connection with the motion to reconsider sentence does not reflect that the trial judge changed the length of probation from five to four years, we find that the trial judge simply misspoke at the hearing on the motion to reconsider sentence, and that she meant to say the probationary period was for five years.
Accordingly, we find the sentence is not indeterminate. No correction is required.
Mandatory Fine
La. R.S. 40:966(B)(3) requires that a person convicted of distribution of marijuana shall pay a fine of not more than $50,000. Here, however, the trial judge did not impose a fine. This Court has held that a statute providing for a fine of “not more than” a specified amount does require a mandatory fine; however, this Court has noted that the matter is not free from doubt. State v. Kerlec, 06-838, p. 8 (La.App. 5 Cir. 4/11/07), 957 So.2d 810, 815, writ denied, 07-1119 (La.12/7/07), 969 So.2d 626, citing Chief Justice Calogero’s dissent in State v. Phillips, 02-0866 (La.11/22/02), 834 So.2d 972.
Under La.C.Cr.P. art. 882, this Court has the authority to correct an illegal sentence despite the failure of either party to raise the issue. Such correction, however, is not mandatory. State v. Quinones, 03-907, p. 11 (La.App. 5 Cir. 12/30/03), 864 So.2d 824, 830. Because the matter is not free from doubt and because the defendant appears to be indigent since she is being represented by the Louisiana Appellate Project, we decline to exercise our discretion to impose a fine. State v. Bennett, 10-393, p. 12 (La.App. 5 Cir. 3/29/11), 63 So.3d 251, 260.[7]
DECREE
For the foregoing reasons, the conviction and sentence are affirmed.

CONVICTION AND SENTENCE AFFIRMED

. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

. La.C.Cr.P. art. 651 states, "When a defendant is tried upon a plea of 'not guilty', evidence of insanity or mental defect at the time of the offense shall not be admissible.”

.La.C.Cr.P. art. 821(B) states, "A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.”

. La. R.S. 40:964 was amended by the Louisiana Legislature in 2011; however, those *567 amendments do not change the analysis here.

. As was proper, the jury was not apprised of the information regarding the sanity issue.

. In State v. Bennett, 345 So.2d 1129, 1138 (La.1977), the Louisiana Supreme Court specified the applicable criteria in a competency determination:
Appropriate considerations in determining whether the accused is fully aware of the nature of the proceedings include: whether he understands the nature of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understand the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the consequences of conviction. Facts to consider in determining an accused’s ability to assist in his defense include: whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial.

. In State v. Bennett, a writ application was filed with the Louisiana Supreme Court on May 6, 2011 under No. 2011-KO-931.